IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cr-00123-TSE |
| | ) | |
| OSCAR CONTRERAS AGUILAR, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**GOVERNMENT'S OMNIBUS REPLY IN SUPPORT OF MOTION TO
VACATE THE TRIAL DATE AND SCHEDULE A STATUS CONFERENCE**

The government has asked the Court to vacate the currently scheduled trial date of October 15, 2019, and schedule a status conference for November 22, 2019. Animating the government's request were two primary goals: (1) affording the defendants adequate time to prepare their cases for why the government should not seek the death penalty against them for their roles in the heinous murders of two juveniles; and (2) reducing the risk that, should a sentence of death be sought against any defendant, this case becomes mired in a time-consuming interlocutory appeal.

Some, though notably not all, of the defendants have registered their objection to proceeding in this manner. In their view, the Court should forge ahead with a trial in October on a superseding indictment that, for the first time, charges death-eligible offenses and was returned by the grand jury last week.[1] Curiously, some of these defendants, despite previously claiming

---

[1] Defendant Ronald Herrera Contreras ("Herrera") claims that the government only obtained the second superseding indictment when it did because of the Court's order, entered on January 28, 2019, Docket Entry ("DE") 150, requiring the government to seek such an indictment by February 22, 2019, DE 176 at 1. Not so. In fact, before the Court's order issued, undersigned counsel had (1) submitted to the United States Attorney a prosecution memorandum to be forwarded to the Organized Crime and Gang Section of the Department of Justice's Criminal Division seeking authority to supersede with death-eligible offenses, and (2) requested time with the grand jury for the week preceding the deadline that the Court later imposed. Thus, even in the

that they could not adequately develop their mitigation cases because they were unable to secure the requisite funding until capital offenses were charged, DE 116 at 1-2; DE 147 at 3, 6-7, suddenly seem eager to dispense with the thorough investigation that typically underlies such a mitigation case.[2]

Point in case: just one month ago, counsel for one of the objecting defendants expressed in a motion that "it is impossible to believe that Mr. Baires Abarca could be indicted capitally, undergo the authorization process, receive funding, and effectively investigate and prepare both factual and mitigation defenses by October 2019." *Id.* at 3-4. The government agrees, and in light of yesterday's and today's filings, see DEs 174-76, 178, one would think that defense counsel had undergone a conversion. But of course that is not what is going on here. Rather, the objecting defendants have seized on what they believe is an opportunity to take death off the table preemptively—before the decision is ever presented to the Attorney General of the United States—by short circuiting the government's death-penalty authorization process or, should that fail, by setting up a claim that any notice of intent to seek the death penalty (hereinafter, "Death Notice") that might be filed by the government was not submitted a "reasonable time" before trial, in contravention of the notice provision codified in 18 U.S.C. § 3593(a). In so doing, the defendants seem keen to rush what should be the most well-considered decision that any government ever makes. The Court should nip this gambit in the bud.

In their oppositions, the defendants address the timeliness of the government's motion but take contradictory positions. Whereas defendants Henry Zelaya Martinez ("Henry Zelaya"),

---

absence of an order from the Court, the government would have sought the second superseding indictment last week

[2] The government has requested a status conference in November because it presumed that the defendants would be hiring investigators to uncover relevant information that the government is unable to discover, such as, for example, school records from El Salvador.

Fredys Baires Abarca ("Baires"), and Yonathan Melgar Martinez ("Melgar") assert that the motion is "premature," DE 174 at 1; DE 175 at1; DE 178 at 1, Herrera claims that the motion is "untimely," DE 176 at 1.  Neither contention is correct.

In support of their view, Henry Zelaya, Baires, and Melgar point out that the government's motion, which they acknowledge is intended to protect their rights, DE 174 at 1, precedes the filing of a Death Notice in this case.  True enough, but that does not render the motion premature.  Quite the opposite; the defendants need to be afforded the time now to develop their mitigation cases because that very process directly informs whether the government files a Death Notice and also because the issuance of a Death Notice cannot serve as the basis for a continuance of the trial date. *United States v. Ferebe*, 332 F.3d 722, 737 (4th Cir. 2003).  Under these defendants' illogic, therefore, the trial date is effectively immutable—any motion to vacate it filed before the issuance of a Death Notice must be denied as premature, and any such motion filed after the issuance of a Death Notice is dead on arrival under *Ferebe*.  Obviously this cannot be.

Herrera, as mentioned, is wrong, too.  Were it not for the return of the second superseding indictment last week charging death-eligible offenses, and the various processes triggered as a result thereof, there would have been no need to file the instant motion.  But now that the second superseding indictment is operative, the relief sought by the government is necessary.  That the government took three business days to research the applicable law and file the motion cannot seriously be said to evince any tardiness.

Apart from these inconsistent positions, the objecting defendants argue more broadly that the government has taken too long to investigate and prosecute this case.[3]  For example, Herrera

---

[3] The defendants advance a corollary to this argument, maintaining that they are at risk of not having their cases expeditiously resolved.  But this lament rings hollow, particularly coming from Herrera, who entered federal custody in July 2018, and from Henry Zelaya, who was apprehended in November 2018.  If the trial commences on October 15, 2019, as currently

3

declares that "[t]he Government has had two+ years to commence prosecution on capital charges and to either seek or decline to seek the death penalty." DE 176 at 1. But this is not even remotely true. It has not even been two years since the slain juveniles' buried remains were discovered and not even one year since the first defendant charged in this case was indicted. *See* DE 172 at 2. Moreover, as the defendants well know, there were no capital offenses charged in this case prior to last week, which belies Henry Zelaya's contention that the government "has had ample time to resolve . . . what penalties it would seek within the existing time schedule." DE 174 at 1. Plainly, the government cannot determine whether to seek the death penalty against a defendant until he has been charged with an offense that actually permits such a sanction upon conviction. Moreover, the government has never suggested to the Court or to the defendants that the determination of whether to seek the death penalty would be made prior to, or concurrently with, the return of a second superseding indictment charging death-eligible offenses.

As for the period between May 2018, when the government obtained the first superseding indictment charging most, but not all, of the defendants in this case, and now, the objecting defendants would have the Court believe that the government could have been making progress but instead sat by idly. However, for reasons summarized in an *ex parte* under seal filing submitted by the government on September 4, 2018, *see* DE 115, that is not the case. To the contrary, undersigned counsel have done practically everything in their power to move along this complex prosecution, including obtaining the second superseding within one month of accomplishing the prerequisites to doing so described in the aforementioned *ex parte* submission.

---

scheduled, they will have spent 445 days and 332 days in federal pretrial detention, respectively. That stands in stark contrast to the pretrial detention intervals of similarly situated defendants in previous death-penalty cases in this district. *See, e.g.*, *United States v. Salad*, No. 2:11-cr-00034 (818 days); *United States v. Torrez*, No. 1:11-cr-00115 (1,021 days).

4

Throughout this case, the government has been clear with the defendants when it comes to its intention to seek a second superseding indictment and the consequences that securing one would have on scheduling in this case. Indeed, shortly before the status hearing that the Court held on September 7, 2018, the government filed a motion to continue that hearing in which it laid out where matters stood in the case. DE 114. In that motion, the government explicitly noted: "While the Court may wish to set a trial date and a motions deadline at the upcoming status hearing, *those dates are likely to change if and when a grand jury supersedes with death eligible offenses*." *Id.* at 2-3 (emphasis added). That the government has asked to vacate the current trial date should therefore come as no surprise.

If the Court denies the government's motion to vacate the trial date or, stopping short of that, grants the request of some of the defendants to postpone resolution of the motion pending a hearing on the matter some weeks from now, the government will have no choice but to insist that counsel for all defendants be prepared to present their mitigation cases to the United States Attorney next week. If the defendants want to gamble away an opportunity to deliver a meaningful presentation to the Department of Justice in the hopes of better positioning themselves to move to strike a Death Notice or to delay significantly the case with an interlocutory appeal, so be it. The government will be prepared in any event to pursue justice for the two boys who were brutally murdered.

\* \* \*

The fastest way to slow down this case is to retain the current trial date. That is because if there is a trial date scheduled when a Death Notice is filed, an interlocutory appeal is all but guaranteed, regardless of how the Court rules on a motion to strike the Death Notice as not reasonably timely under § 3593(a). *See United States v. Moussaoui*, 382 F.3d 453, 463 (4th Cir.

2004) (holding that, under 18 U.S.C. § 3731, government can immediately appeal dismissal of death notice); *Ferebe*, 332 F.3d at 726 (holding that district court's order denying motion to strike death notice as untimely is subject to interlocutory appeal). Accordingly, the government reiterates its request to vacate the current trial date and schedule a status conference. While the government has requested that such a status conference be held on November 22, 2019, the government believes it can be scheduled earlier if all defense counsel assure the Court that they can meaningfully present mitigation evidence to the United States Attorney and, if necessary, the Capital Case Review Committee, in less than four months' time. The government would be prepared at such an expedited status conference to update the Court and the defendants on where, at that time, the case stands in the death-penalty authorization process.

        Respectfully Submitted,

        G. Zachary Terwilliger
        United States Attorney

By:     /s/
        Rebeca H. Bellows
        Alexander E. Blanchard
        Assistant United States Attorneys
        United States Attorney's Office
        2100 Jamieson Avenue
        Alexandria, Virginia 22314
        Tel: (703) 299-3700
        Fax: (703) 299-3982
        becky.bellows@usdoj.gov
        alexander.blanchard@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

                                                              /s/
                                              Alexander E. Blanchard
                                              Assistant United States Attorney